# NOTE

Cotter

| April 25, 2023 | Springfield, | Pennsylvania |
|---|---|---|
| [Date] | [City] | [State] |

57 Eagle Road, Springfield, PA 19064
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $40,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **Discover Bank**. I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **12.740%**.

The interest rate required by this Section 2 is the rate I will pay both before and after any Survival Event as defined in this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **1st** day of each month beginning on **June 1, 2023.** I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **May 1, 2033,** I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date." I will continue to pay those amounts both before and after any Survival Event as defined in this Note, until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.

I will make my monthly payments at **PO Box 371306, Pittsburgh, PA 15250-7306** or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $591.12.

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

Page 1 of 3

PENNSYLVANIA - SECOND FIXED RATE NOTE - 08/16

Initials:

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5%** of my overdue payment of principal and interest or **$29, whichever is less.** I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees. I will pay the Note Holder back for those expenses paid by the Note Holder both before and after any Survival Event as defined in this Note.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of

Page 2 of 3

PENNSYLVANIA - SECOND FIXED RATE NOTE - 08/16

Initials: CC  SC

those conditions are described as follows:

    If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

    If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 12 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**11. EFFECT OF SURVIVAL EVENTS**

For purposes of this Note, "Survival Event" is defined as follows:

    (a) any default described in Section 6(B) of this Note;

    (b) Noteholder requiring me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount under Section 6(C) of this Note;

    (c) Noteholder requiring immediate payment in full of all sums secured by the Security Instrument;

    (d) the Maturity Date as defined in this Note;

    (e) the entry of any judgment against me under this Note; and

    (f) the entry of any judgment under the Security Instrument.

**NOTICE TO BORROWER**
Do not sign this Note if it contains blank spaces.
All spaces should be completed before you sign.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_[signature]_ 4/25/23
- BORROWER - Caitlin Cotter - DATE -

_[signature]_ 04/25/23
- BORROWER - Sean Cotter - DATE -

*[Sign Original Only]*

Individual Loan Originator: **Bethany Lynn Traute**, NMLSR I
Loan Originator Organization: **Discover Bank**, NMLSR ID

PENNSYLVANIA - SECOND FIXED RATE NOTE - 08/16
Page 3 of 3

## DO NOT DETACH



| | |
|---|---|
| | **Robert A. Auclair, Esq.**<br>Delaware County Recorder of Deeds<br>Government Center, Room 107<br>201 W. Front Street<br>Media, PA 19063<br>610-891-4152 |
| **Instrument Number: 2023015225**<br>**Volume/Page:** RECORD BK 6903 PG 4265<br>**Recorded Date:** 05/05/2023 2:21:20 PM | |
| Transaction Number<br>Collected By: pontem<br>Document Type: MORTGAGE<br>Document Page Count: : 8 | Return To (Simplifile):<br>Accurate Group, LLC - OH<br>6000 FREEDOM SQUARE SUITE 300<br>INDEPENDENCE, OH 44131 |
| Parcel | |
| Fees:<br>RECORDING FEES: $37.50<br>AFFORDABLE HOUSING FEE: $16.00<br>COUNTY IMPROVEMENT FUND: $5.00<br>ACT 152 FEE: $15.00<br>JCS/ATJ FEE: $40.25<br>ADDITIONAL PAGE FEE: $8.00<br>ADDITIONAL PAGE FEE (AFF): $8.00<br>WRIT TAX: $0.50<br><br>Total Fees: $130.25<br><br>Amount Paid: $130.25<br><br>Amount Due: $0.00 | **Instrument Number:** 2023015225<br>**Volume/Page:** RECORD BK 6903 PG 4265<br>**Recorded Date:** 05/05/2023 2:21:20 PM |

OFFICIAL RECORDING COVER PAGE

## DO NOT DETACH

THIS PAGE IS NOW PART OF THIS RECORDED DOCUMENT
NOTE: If the document data differs from this cover sheet, please first check the document on our website to ensure it has been corrected. The document data always supersedes the cover page.
If an error on the cover page appears on our website after review please let our office know.
COVER PAGE DOES NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT FOR ANY ADDITIONAL INFORMATION.

After Recording Return To:
Discover Fulfillment Center
6000 Freedom SQ, # 300
Independence, OH 44131
1-800-973-5054

Prepared By: Kene Gordon
Discover Bank
502 E. Market St.
Greenwood, DE 19950

Premises:
57 Eagle Road
Springfield, PA 19064

[Space Above This Line For Recording Data]

# MORTGAGE

Cotter

THIS MORTGAGE is made this 25th day of April, 2023, between the Mortgagor, SEAN COTTER AND CAITLIN COTTER, AS JOINT TENANTS WITH RIGHT OF SURVIVORSHIP (herein "Borrower"), and the Mortgagee, Discover Bank, organized and existing under the laws of Delaware, whose address is 502 E. Market St., Greenwood, DE 19950 (herein "Lender").

WHEREAS, Borrower is indebted to Lender in the principal sum of U.S. $40,000.00, which indebtedness is evidenced by Borrower's note dated April 25, 2023 and extensions and renewals thereof (herein "Note"), providing for monthly installments of principal and interest, with the balance of the indebtedness, if not sooner paid, due and payable on May 1, 2033;

TO SECURE to Lender the repayment of the indebtedness evidenced by the Note, with interest thereon; the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Mortgage; and the performance of the covenants and agreements of Borrower herein contained, Borrower does hereby mortgage, grant and convey to Lender the following described property located in the county of Delaware, State of Pennsylvania:

ALL THAT CERTAIN LOT OR PIECE OF GROUND WITH THE BUILDINGS AND IMPROVEMENTS THEREON ERECTED, HEREDITAMENTS -AND APPURTENANCES, SITUATE IN SPRINGFIELD TOWNSHIP, COUNTY OF DELAWARE AND STATE OF PENNSYLVANIA, BOUND AND DESCRIBED ACCORDING TO A PLAN OF PROPERTY FOR JAMES STEWART, JR., MADE BY C.D. HOUTMAN AND SON, CIVIL ENGINEERS AND LAND SURVEYORS MEDIA, PA., DATED JUNE 2, 1972 AND LAST REVISED MAY 7, 1977, AS FOLLOWS, TO WIT:

BEGINNING AT A POINT IN THE BED OF EAGLE ROAD (33 FEET WIDE), WHICH POINT IS AT THE DISTANCE OF 648.75 FEET MEASURED IN A NORTHEASTWARDLY DIRECTION FROM THE PHYSICAL CENTER LINE OF SPRINGFIELD ROAD, SAID BEGINNING POINT BEING A CORNER OF LANDS NOW OR LATE OF CLIFFORD EVANS; THENCE EXTENDING FROM SAID POINT OF BEGINNING MEASURED NORTH 52 DEGREES, 21 MINUTES, 30

Page 1 of 8

PENNSYLVANIA - SECOND MORTGAGE - 03/18

Initials: CC  SC

SECONDS EAST, ALONG THE CENTER LINE OF EAGLE ROAD, 100.03 FEET TO A CORNER OF LANDS NOW OR LATE OF DREXEL HOLDING COMPANY; THENCE EXTENDING ALONG SAME, SOUTH 36
DEGREES, 13 MINUTES, 30 SECONDS EAST, CROSSING THE SOUTHEASTERLY SIDE OF EAGLE ROAD, 152.39 FEET TO A POINT IN LINE OF LANDS NOW OR LATE OF JOHN C. BOYLE, ETUX; THENCE EXTENDING ALONG SAID LANDS, SOUTH 53 DEGREES, 43 MINUTES, 30 SECONDS WEST, 100 FEET TO A POINT IN LINE OF LANDS NOW OR LAM OF CLIFFORD EVANS; THENCE EXTENDING ALONG SAME AND RECROSSING THE SOUTHEASTERLY SIDE OF EAGLE ROAD MEASURED NORTH 36 DEGREES, 13 MINUTES, 30 SECONDS WEST, 150 FEET TO A POINT IN THE BED OF EAGLE ROAD, AFORESAID BEING THE FIRST MENTIONED POINT AND PLACE OF BEGINNING.

THIS BEING THE SAME PROPERTY CONVEYED TO SEAN COTTER AND CAITLIN COTTER, AS JOINT TENANTS WITH RIGHT OF SURVIVORSHIP, DATED 10/28/2019 AND RECORDED ON 11/07/2019 IN BOOK 6419, PAGE 206, IN THE DELAWARE COUNTY
RECORDERS OFFICE.

PARCEL NO.
which has the address of 57 Eagle Road, Springfield, Pennsylvania 19064 (herein "Property Address");

   TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents, all of which shall be deemed to be and remain a part of the property covered by this Mortgage; and all of the foregoing, together with said property (or the leasehold estate if this Mortgage is on a leasehold) are hereinafter referred to as the "Property".
   Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

   UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
   **1. Payment of Principal and Interest.** Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and late charges as provided in the Note.
   **2. Funds for Taxes and Insurance.** Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Mortgage and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional lender.
   If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to

Page 2 of 8

PENNSYLVANIA - SECOND MORTGAGE - 03/18

Initials: CC  SC

make such a charge. Borrower and Lender may agree in writing at the time of execution of this Mortgage that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Mortgage.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Mortgage, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Mortgage.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower for interest payable on the Note, then to the principal of the Note, and then to amounts under paragraph 2 hereof, if any.

If Lender receives a payment from Borrower for a delinquent periodic payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one periodic payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the periodic payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more periodic payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or miscellaneous proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the periodic payments.

**4. Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Mortgage, and leasehold payments or ground rents, if any.

**5. Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Page 3 of 8

PENNSYLVANIA - SECOND MORTGAGE - 03/18

Initials: _CC_  _SC_

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Mortgage.

6. **Preservation and Maintenance of Property; Leaseholds; Condominiums: Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Mortgage is on a leasehold. If this Mortgage is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

7. **Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Mortgage, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Mortgage, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Mortgage. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

8. **Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

9. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

10. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Mortgage granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

11. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Mortgage, but does not execute the Note, (a) is co-signing this Mortgage only to mortgage, grant and convey that Borrower's interest in the Property to Lender under the terms of this Mortgage, (b) is not personally liable on the Note or under this Mortgage, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Mortgage or the Note without that Borrower's consent and without releasing that Borrower or modifying this Mortgage as to that Borrower's interest in the Property.

Page 4 of 8

PENNSYLVANIA - SECOND MORTGAGE - 03/18

Initials: CC  SC

**12. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Mortgage shall be given by delivering it or by mailing such notice by first class mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by first class mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Mortgage shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**13. Governing Law; Severability.** The state and local laws applicable to this Mortgage shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of Federal law to this Mortgage. In the event that any provision or clause of this Mortgage or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Mortgage and the Note are declared to be severable. As used herein, "costs," "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

**14. Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Mortgage at the time of execution or after recordation hereof.

**15. Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

**16. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Mortgage. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Mortgage.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Mortgage. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Mortgage without further notice or demand on Borrower.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Acceleration; Remedies. Upon Borrower's breach of any covenant or agreement of Borrower in this Mortgage, including the covenants to pay when due any sums secured by this Mortgage, Lender prior to acceleration shall give notice to Borrower as provided by applicable law specifying, among other things: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 30 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage, foreclosure by judicial proceeding, and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the nonexistence of a default or any other defense of Borrower to acceleration and foreclosure. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may foreclose this Mortgage by judicial proceeding. Lender shall be entitled to collect in such proceeding all expenses of foreclosure, including, but not limited to, reasonable attorneys' fees, and costs of documentary evidence, abstracts and title reports.**

Page 5 of 8

PENNSYLVANIA - SECOND MORTGAGE - 03/18

Initials: CC  SC

**18. Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Mortgage due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Mortgage discontinued at any time prior to at least one hour before the commencement of bidding at a sheriff's sale or other sale pursuant to the Mortgage if: (a) Borrower pays Lender all sums which would be then due under this Mortgage and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Mortgage; (c) Borrower pays all reasonable expenses incurred by Lender in enforcing the covenants and agreements of Borrower contained in this Mortgage and in enforcing Lender's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Mortgage, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Mortgage shall continue unimpaired. Upon such payment and cure by Borrower, this Mortgage and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

**19. Assignment of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bond and reasonable attorneys' fees, and then to the sums secured by this Mortgage. Lender and the receiver shall be liable to account only for those rents actually received.

**20. Release.** Upon payment of all sums secured by this Mortgage, Lender shall discharge this Mortgage without charge to Borrower. Borrower shall pay all costs of recordation, if any.

**21. Effect of Survival Events.** Both before and after any Survival Event, as defined below, Borrower shall:

(a) pay Funds for Escrow Items or pay Escrow Items directly as provided in Section 2 of this Security Instrument;

(b) pay the amounts and take the actions required by Section 4 of this Security Instrument;

(c) maintain insurance coverages and take the other actions required by Section 5 of this Security Instrument;

(d) maintain, repair and restore the Property and take the other actions required by Section 6 of this Security Instrument;

(e) if this Security Instrument is on a leasehold, comply with all the provisions of the lease;

(f) treat any amounts disbursed by Lender under Section 7 of this Security Instrument as additional debt of Borrower secured by this Security Instrument;

(g) permit the collection and application of miscellaneous proceeds as required by Section 15 of this Security Instrument;

(h) pay the fees required by Section 17 of this Security Instrument;

(i) pay any collection expenses under Section 17 of this Security Instrument; and

(j) pay interest at the rate payable from time to time under the Note.

"Survival Event" means any of the following:
(a) any default described in the Note;
(b) Lender requiring Borrower to pay immediately the full amount of Principal which has not been paid

PENNSYLVANIA - SECOND MORTGAGE - 03/18
Page 6 of 8

Initials: CC  GC



and all the interest that Borrower owes on that amount under the Note;
  (c) Lender requiring immediate payment in full of all sums secured by this Security Instrument as described in the Note and Sections 16 and 17 of this Security Instrument;
  (d) the Maturity Date as defined in the Note;
  (e) the entry of any judgment against Borrower under the Note; and
  (f) the entry of any judgment under this Security Instrument.

The Following Rider(s) are to be executed by Borrower and are attached hereto and made a part thereof [check box as applicable]:

☐ Adjustable Rate Rider   ☐ Condominium Rider   ☐ Second Home Rider
☐ Balloon Rider   ☐ Planned Unit Development Rider   ☐ Biweekly Payment Rider
☐ 1-4 Family Rider   ☐ Other(s) [specify]

IN WITNESS WHEREOF, Borrower has executed this Mortgage.

_Caitlin Cotter_ 4/25/23
- BORROWER - Caitlin Cotter - DATE -

_Sean Cotter_ 04/25/23
- BORROWER - Sean Cotter - DATE -

*(Sign Original Only)*

State of __Pennsylvania__
County of __Delaware__

This record was acknowledged before me on **April 25, 2023** by
__Caitlin Cotter, Sean Cotter__

_Notary Public_

Commonwealth of Pennsylvania - Notary Seal
CLAIRE TRUTH - Notary Public
Delaware County
My Commission Expires March 24, 2027
Commission Number ████

My Commission Expires: __3/24/2027__

Individual Loan Originator: **Bethany Lynn Traute**, NMLSR ID: ███
Loan Originator Organization: **Discover Bank**, NMLSR ID: ███

**Certificate of Residence**

I **Discover Bank**, do hereby certify that the correct address of the within-named Mortgagee is **502 E. Market St., Greenwood, DE 19950**.

Witness my hand this **25th** day of **April, 2023**.

*Tyler Greene*
Agent on behalf of Mortgagee
**Discover Bank**

Page 8 of 8

PENNSYLVANIA - SECOND MORTGAGE - 03/18

Initials: ___



Large Bank Licensing

May 9, 2025

**Sent by email to <u>rkim@wlrk.com</u>**

Richard K. Kim, Esq.
Partner, Corporate
Wachtell, Lipton, Rosen & Katz
51 West 52nd Street
New York, New York 10019

Re: Application for the merger of Discover Bank, Greenwood, Delaware with and into Capital One, National Association, McLean, Virginia

OCC Control Number: ███████████████████████████

Dear Mr. Kim:

This letter is the official certification of the Comptroller of the Currency (OCC) to merge Discover Bank, Greenwood, Delaware with and into Capital One, National Association, McLean, Virginia, effective as of May 18, 2025. The resulting bank title is Capital One, National Association, charter number ██████.

If the combination does not occur as represented in your correspondence of May 7, 2025, this certification must be returned to the OCC.

Please include the OCC control number on any correspondence related to this filing. If you have any questions, please contact me at (917) 344-3405 or <u>jason.almonte@occ.treas.gov</u>.

Sincerely,


Jason Almonte
Director for Large Bank Licensing